FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

2022 JUL 20  AM 9:12

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

-----------------------------------------------------------x

ROY MCCORMICK
504 Highway 70 W, Unit 103
Havelock, NC 28532

Civil Action No. 6:22-cv-1270-CEM-DCI

      Plaintiff,

vs.

IGIA, INC.
111 Glen Street
Glen Cove, NY 11542

      Defendant.

-----------------------------------------------------------x

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, ROY MCCORMICK (hereinafter referred to as "Plaintiff"), who, via *Pro Se* submission files this, his Complaint for Damages and Demand for Jury Trial against Defendant IGIA, INC. (hereinafter referred to as "Defendant"), and in support thereof, states the following:

## PARTIES

1. Plaintiff is *sui juris* before this Court and at all times material, was a resident of the State of North Carolina.

2. Defendant is a health and beauty pharmaceutical for-profit entity, incorporated and headquartered in New York. Upon information and belief, Defendant is licensed to conduct

1

everyday business in Florida, and sell its products to consumers nationwide, including to those in Florida and North Carolina at a variety of retail outlets and shops.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

4. Venue is proper in this court since a significant amount of the events and conduct complained of herein occurred in the Middle District of Florida, and is invoked pursuant to 28 U.S.C. 1391(b)(2).

5. Personal jurisdiction is established over Defendant as it conducts business and sells its products to consumers in the State of Florida, and thus has had minimum contacts with the State of Florida to establish personal jurisdiction.

6. All conditions precedent to the filing of this action have occurred, accrued, or have been waived as a matter of law.

7. All actions taken by the Defendants' employees as alleged in this complaint were done within the scope of their official duties and under the color of law.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS

8. Defendant brought to market a product known as "Epil Stop," hereinafter referred to as "the Product."

9. The Product has been on the market for many years.

10. The Product is advertised by Defendant as "An easy, gentle way, to remove unwanted hair in just minutes! Clinically tested, Epil-Stop works anywhere you need to remove hair for weeks... face, underarms, legs, arms, bikini line... leaving your skin softer smoother and healthier. Epil-Stop's unique hair growth inhibitors produce a marked difference in hair re-growth, as it comes in slower, finer and lighter than ever before."

11. On or about October 2, 2016, Plaintiff purchased the Product from a retail outlet in Orlando, Florida.

12. On or about October 2, 2016, Plaintiff applied the Product to his neck area.

13. In or around October 2017, Plaintiff received a diagnosis of Alopecia Areata.

14. In or around September 2018, Plaintiff received a psychiatric diagnosis of major depression, single severe R/O Bipolar and Schizophrenia. Said diagnosis was directly attributable to the Alopecia diagnosis.

15. Alopecia Areata is also known as spot baldness and is a condition in which hair is lost from some or all areas of the body. *See "Alopecia Areata - NORD (National Organization for Rare Disorders)" 2004*.

16. Plaintiff has been treated for Alopecia Areata since his diagnosis.

17. Plaintiff's diagnosis will cause irreparable pain and suffering.

18. As a direct and proximate result of Defendant's actions as described herein, Plaintiff has been damaged.

## CAUSES OF ACTION

### COUNT ONE – STRICT LIABILITY FOR FAILURE TO WARN

19. Plaintiff re-alleges the allegations contained in the preceding paragraphs above, as if fully set forth herein.

20. To prove a claim for strict liability for defective design, a plaintiff must show that the defendant manufactured or distributed the product in question, that the product has a defect that renders it unreasonably dangerous and that the unreasonably dangerous condition is the proximate cause of the plaintiff's injury. *Jennings v. BIC Corporation*, 181 F.3d 1250, 1255 (11th Cir.1999); *West v. Caterpillar Tractor Co.*, 336 So.2d 80 (Fla.1976).

21. At all pertinent times, Defendant manufactured, packaged and sold to consumers the Product and they knew that consumers of the product were using it on their heads and other parts of their body.

22. At all pertinent times, Defendant knew and/or should have known, of the unreasonably dangerous nature of the Product and they knew or should have known that they were not warning its consumers of this danger.

23. At all pertinent times, Defendant was manufacturing, marketing, testing, promoting, selling and/or distributing the Product in the regular course of business.

24. At all pertinent times, Plaintiff used the Product to remove hair on his head, which is a reasonably foreseeable use.

25. At all pertinent times, Defendant knew or should have known, that the use of the product has been linked to serious health ailments, including Alopecia Areata.

26. At all pertinent times, including the time of sale and consumption, the Product, when put to the aforementioned reasonably foreseeable use, was in an unreasonably dangerous and

defective condition because it failed to contain adequate and proper warnings and/or instructions regarding the increased risk of adverse and serious health ailments associated with the use of the Product by consumers.

27. Defendant failed to properly and adequately warn and instruct Plaintiff as to the risks and benefits of the product given Plaintiff's need for this information.

28. Had Plaintiff received a warning that the use of the Product would have significantly increased his risk of Alopecia Areata, he would not have used the Product.

29. As a proximate result of Defendant's design, manufacture, marketing, sale, and distribution of the Product, Plaintiff has been injured, and has been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

30. Defendant's product was defective because it failed to contain warnings and/or instructions and breached express warranties and/or failed to conform to express factual representations upon which Plaintiff justifiably relied in electing to use the Product.

31. The defect or defects made the product unreasonably dangerous to its users, such as Plaintiff, who could reasonably be expected to use and rely upon such product.

32. As a result, the defect or defects were a producing cause of Plaintiff's injuries and damages.

33. Defendant's product failed to contain, and continue to this day not to contain, adequate warnings and/or instructions regarding the increased risk of serious adverse health ailments, including Alopecia Areata, with the use of their product.

34. Defendant continues to market, advertise, and expressly represent to the general public that it is safe for its consumers to use their product regardless of application.

35. Defendant continues with these marketing and advertising campaigns despite having knowledge that the Product increases the risk of serious adverse health ailments, including Alopecia Areata.

WHEREFORE, Plaintiff prays for judgment against Defendant in a fair and reasonable sum in excess of $1,000,000.00 together with costs expended herein and such further and other relief as the Court deems just and proper.

### COUNT TWO- NEGLIGENCE

36. Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

37. Defendant was negligent in marketing, designing, manufacturing, producing, supplying, inspecting, testing, selling and/or distributing the product in one or more of the following respects:

- In failing to warn Plaintiff of the hazards associated with the use of the Product;

- In failing to properly test the Product to determine adequacy and effectiveness or safety measures, if any, prior to releasing the Product for consumer use;

- In failing to properly test the Product to determine the increased risk of serious adverse health ailments, including Alopecia Areata during the normal and/or intended use of the Product;

- In failing to inform ultimate users, such as Plaintiff, as to the safe and proper methods of handling and using the Product;

- In failing to remove the product from the market when the Defendant knew or should have known the Product was defective;

- In failing to instruct the ultimate users, such as Plaintiff, as to the methods for reducing the type of exposure to the Product which caused increased risk of serious adverse health ailments, including Alopecia Areata;

- In failing to inform the public in general and Plaintiff in particular of the known dangers of using the Product for use on the head;

- In failing to act like a reasonably prudent company under similar circumstances.

38. Each and all of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiff.

39. At all pertinent times, Defendant knew or should have known that the Product was unreasonably dangerous and defective when put to its reasonably anticipated use.

40. As a direct and proximate result of Defendant's negligence in one or more of the aforementioned ways, Plaintiff purchased and used, as aforesaid, the product that directly and proximately caused Plaintiff to develop Alopecia Areata; Plaintiff was caused to incur medical bills, lost wages, mental anguish and conscious pain and suffering.

WHEREFORE, Plaintiff prays for judgment against Defendant in a fair and reasonable sum in excess of $1,000,000.00, together with costs expended herein and such further and other relief as the Court deems just and proper.

### COUNT THREE- BREACH OF EXPRESS WARRANTY- VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. § 2301)

41. Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

42. Representations which are the subject of breach of express warranty claims are considered to be requirements imposed by the warrantor, not by the state. *Cipollone vs. Liggett Group, Inc.*, 505 U.S. 504, 525, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)).

43. Plaintiff brings forth his claim against Defendant for breach of express warranty under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301.

44. The federal MMWA creates a civil cause of action for consumers to enforce the terms of implied or express warranties. See 15 U.S.C. § 2310(d).

45. Under the MMWA, a "written warranty" means a "written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material . . . and affirms or promises that such material . . . is **defect free** or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). (emphasis added).

46. Defendant expressly warranted, through direct-to-consumer marketing, advertisements, and labels, that the Product was safe and effective for reasonably anticipated uses, including use by consumers on their heads.

47. The Product did not conform to these express representations because it causes serious injury when used by consumers in the form of its increased risk of serious adverse health ailments, including Alopecia Areata.

48. As a direct and proximate result of the Defendant's breach of warranty, Plaintiff purchased and used, as aforesaid, the Product that directly and proximately caused Plaintiff to suffer

injury; Plaintiff was caused to incur medical bills, lost wages, and conscious pain and suffering for the rest of his life.

**WHEREFORE,** Plaintiff prays for judgment against Defendant in a fair and reasonable sum in excess of $1,000,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

### COUNT FOUR- BREACH OF IMPLIED WARRANTIES

49. Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

50. At the time the Defendant manufactured, marketed, labeled, promoted, distributed and/or sold the Product, the Defendants knew of the uses for which the product was intended, including use by consumers, and impliedly warranted the product to be of merchantable quality and safe for such use.

51. Defendant breached their implied warranties of the Product sold to Plaintiff because it was not fit for their common, ordinary and intended uses, including use by consumers on their heads.

52. As a direct, foreseeable and proximate result of the Defendant's breaches of implied warranties, Plaintiff purchased and used, as aforesaid, the Product that directly and proximately caused Plaintiff to suffer injury; Plaintiff was caused to incur medical bills, lost wages, and conscious pain and suffering for the rest of his life.

**WHEREFORE,** Plaintiff prays for judgment against the Defendant in a fair and reasonable

sum in excess of $1,000,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July **20**, 2022.

Respectfully submitted,

*[signature]*

**ROY MCCORMICK**
504 Highway 70 W, Unit 103
Havelock, NC 28532
Ph.: 1.252.639.1177
Email: roy4475@yahoo.com

*Pro Se Plaintiff*

10